PD-0418-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 4/16/2015 11:28:45 AM
Accepted 4/21/2015 10:50:29 AM
ABEL ACOSTA
CLERK

**No.**
In the
**COURT OF CRIMINAL APPEALS**
For the
**STATE OF TEXAS**

---

**THOMAS ANDREW EVANS, II**
*Appellant*
*v*
**THE STATE OF TEXAS**
*Appellee*

---

**On State's Petition for Discretionary Review from the Fourteenth Court of Appeals, Appeal Number 14-13-00642-CR**
**On Appeal from County Court at Law Number Two of Fort Bend County, Texas, Cause Number 12-CCR-159784**

---

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

---

*Counsel for Petitioner*

**JOHN F. HEALEY**
DISTRICT ATTORNEY
FORT BEND COUNTY, TEXAS

**JASON BENNYHOFF**
ASSISTANT DISTRICT ATTORNEY
FORT BEND COUNTY, TEXAS

309 South Fourth Street, 2nd floor
Richmond, Texas 77469
281-341-4460 (Tel.)
281-238-3340 (Fax)
jason.bennyhoff@fortbendcountytx.gov

FILED IN
COURT OF CRIMINAL APPEALS

April 21, 2015

ABEL ACOSTA, CLERK

# IDENTIFICATION OF PARTIES

Pursuant to Tex. R. App. P. 38.1, a complete list of the names of all interested parties is provided below so the members of this Honorable Court may at once determine whether they are disqualified to serve or should recuse themselves from participating in the decision of the case.

**Appellant:**
**THOMAS ANDREW EVANS, II**

**Appellee:**
**THE STATE OF TEXAS**

**Counsel for Appellant:**
**DOUGLAS M. DURHAM**
**(AT TRIAL AND ON APPEAL)**

**Address(es):**
**2800 Post Oak Boulevard, Suite 4100**
**Houston, Texas 77056**

**Counsel for Appellee/State:**
**JOHN F. HEALEY, JR.**
**District Attorney of Fort Bend County, Texas**
**Fort Bend County District Attorney's Office**

**Address(es):**
**301 Jackson Street, Rm 101**
**Richmond, Texas 77469**

**IDENTIFICATION OF PARTIES** (cont.)

**RICHA KUMAR**
**Assistant District Attorneys, Ft. Bend County, Tx.**
**(AT TRIAL)**


**JASON BENNYHOFF**
**Assistant District Attorney, Ft. Bend County, Tx.**
**(ON APPEAL)**

**JOHN J. HARRITY, III**
**Assistant District Attorney, Ft. Bend County, Tx.**

**Trial Judge:**
**The Hon. Jeffrey A. McMeans**
**County Court at Law Number Two**
**Fort Bend County, Texas**

**The Hon. H. Everett Kennedy**
**Associate Judge, County Court at Law Number Two**
**Fort Bend County, Texas**
**Sitting by assignment of the presiding judge**

# TABLE OF CONTENTS

**SECTION**                                                                                   **PAGE**

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

GROUND FOR REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

    Did the Fourteenth Court of Appeals err in holding that there is no
    way in which the mandatory blood draw taken in this case was
    reasonable under the Fourth Amendment to the United States
    Constitution, in reliance on this Court's opinion in *State v. Villarreal*?
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT AND AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

PRAYER FOR RELIEF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

# INDEX OF AUTHORITIES

**CASES**                                                                                    **PAGE**

*Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002)**.** . . . . . . . . . . . . . . . . **6**

*Douds v. State*, No. 14-12-00642-CR, 2013 WL 5629818 (Tex. App.—Houston [14th Dist.] Oct. 15, 2013), *rev'd by Douds v. State*, 434 S.W.3d 842 (Tex. App.—Houston [14th Dist.] 2014, pet. granted Sep. 17, 2014)**.** . . . . . . . . . . . . . . . . **6**

*Evans v. State*, No. 14-13-00642, 2015 WL 545702 at *8 (Tex. App.—Houston [14th Dist.] Feb. 10, 2015)**.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

*Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987)**.** . . . . . . . . . . . . . . . . . . . . . . . . . . **5**

*Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 620-21 (1989)**.** . . . . . . . . . . **5**

*State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014)**.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **passim**

## STATEMENT REGARDING ORAL ARGUMENT

The State does not request oral argument.

**No.**
In the
**COURT OF CRIMINAL APPEALS**
For the
**STATE OF TEXAS**

---

**THOMAS ANDREW EVANS, II**
*Appellant*
*v*
**THE STATE OF TEXAS**
*Appellee*

---

**On State's Petition for Discretionary Review from the Fourteenth Court of Appeals, Appeal Number 14-13-00642-CR**
**On Appeal from County Court at Law Number Two of Fort Bend County, Texas, Cause Number 12-DCR-159784**

---

**STATE'S PETITION FOR DISCRETIONARY REVIEW**

---

**TO THE HONORABLE COURT OF CRIMINAL APPEALS**:

Comes now the State, by and through it's District Attorney of Fort Bend County, and respectfully submits to the Court its petition for discretionary review pursuant to the Texas Rules of Appellate Procedure in the above named cause.

**STATEMENT OF THE CASE**

Thomas Andrew Evans, II, (hereinafter referred to as "Evans") drove his

Toyota Tundra pickup truck through an intersection and struck a Chevrolet Traverse, causing the Traverse to flip over several times. The two occupants of the Chevrolet Traverse were transported to the hospital for their injuries. Evans smelled of alcohol, had red, glassy eyes, and slurred his speech when he was interviewed by the responding DPS Trooper. Evans admitted drinking two to three beers. Evans refused to participate in field sobriety tests and refused to give a sample of his blood. The Trooper ultimately took a sample of Evans blood over Evans's objection in keeping with Texas Transportation Code section 724.012(b)(1)(C).

### STATEMENT OF PROCEDURAL HISTORY

Evans filed a motion to suppress in the trial court, arguing that the involuntary blood draw violated the Fourth Amendment to the United States Constitution. The trial court denied that motion, and Evans then entered into a plea bargain agreement with the State, retaining his right to appeal the trial court's ruling.

On February 10, 2015, the Fourteenth Court of Appeals reversed the ruling of the trial court and remanded the case to the trial court. The State filed a motion for rehearing and a motion for *en banc* reconsideration on February 24, 2015. The Fourteenth Court of Appeals denied the State's motion for rehearing and motion for *en banc* reconsideration (Boyce, J., would grant reconsideration *en banc*), on March 17, 2015.

## GROUND FOR REVIEW

Did the Fourteenth Court of Appeals err in holding that there is no way in which the mandatory blood draw taken in this case was reasonable under the Fourth Amendment to the United States Constitution, in reliance on this Court's opinion in *State v. Villarreal*?

## ARGUMENT AND AUTHORITIES

The Fourteenth Court of Appeals, in reversing the trial court's denial of Evans's motion to suppress the mandatory blood draw in this case, held that implied consent could not justify the warrantless blood draw in this case where Evans withdrew his consent. *Evans v. State*, No. 14-13-00642, 2015 WL 545702 at *8 (Tex. App.—Houston [14th Dist.] Feb. 10, 2015). The Fourteenth Court of Appeals based this holding on this Court's opinion in *State v. Villarreal*, No. PD-0306-14, 2014 WL 6734178 (Tex. Crim. App. Nov. 26, 2014). *Id*.

The State raised numerous other grounds in support of its argument that the warrantless blood draw in this case was permissible under the Fourth Amendment, which were not addressed in the Fourteenth Court of Appeals' opinion, including that the warrantless blood draw was justified under the "special needs doctrine" under *Maryland v. King*, 133 S.Ct. 1958, 1980 (2013), *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 620-21 (1989), and *Griffin v. Wisconsin*, 483 U.S. 868, 873

5

(1987). The Fourteenth Court of Appeals' opinion, while not addressing the State's argument in this vein necessarily impliedly overruled that argument.

The Fourteenth Court of Appeals also did not address the State's argument that Article 38.23 of the Texas Code of Criminal Procedure should not be read to require exclusion of the blood draw evidence obtained in this case in light of the fact that the officers were acting in reliance on the body of case law which read Chapter 724 of the Texas Transportation Code to mandate blood draws without warrants. *See, e.g.*, *Beeman v. State*, 86 S.W.3d 613, 616 (Tex. Crim. App. 2002); *Douds v. State*, No. 14-12-00642-CR, 2013 WL 5629818 (Tex. App.—Houston [14th Dist.] Oct. 15, 2013), *rev'd by Douds v. State*, 434 S.W.3d 842 (Tex. App.—Houston [14th Dist.] 2014, pet. granted Sep. 17, 2014). The Fourteenth Court of Appeals' opinion, while not addressing the State's argument in this vein necessarily impliedly overruled this argument as well.

This Court has since granted the State's motion for rehearing in *State v. Villarreal*. The State's motion for rehearing raised both the issue of the continuing nature of the defendant's consent despite his attempt to withdraw that consent and the applicability of the special needs doctrine. *See* State's Motion for Rehearing and Amended Motion for Rehearing in *State v. Villarreal* attached hereto as Exhibit B in the attached appendix. Being that these issues are considered worthy of this Court's

6

reconsideration in *Villarreal*, this Court should grant the State's petition for discretionary review in this case to address these same issues here.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Appellee, the State of Texas prays that the State's Petition for Discretionary Review be granted, that the case be set for submission, and that after submission, this Court reverse the decision of the Court of Appeals.

Respectfully submitted,

**John F. Healey, Jr.**

/s/ Jason Bennyhoff
**Jason Bennyhoff**
Assistant District Attorney
Fort Bend County, Texas
TBC# 24050277
309 South Fourth Street, 2ⁿᵈ Floor
Richmond, Texas 77469
281-341-4460 (office)
281-238-3340 (fax)

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing State's

Petition for Discretionary Review (and its appendix) has been served upon

Douglas Durham, counsel for Thomas Andrew Evans, II, at

durham.doug@yahoo.com, and that these documents are being served by U.S.

mail on counsel for Thomas Andrew Evans, II, and upon the State Prosecuting

Attorney by U.S. mail on the date of the filing of the original in this case.

/s/ Jason Bennyhoff

Jason Bennyhoff

## Certificate of Compliance with Texas Rule of Appellate Procedure 9.4(i)(3)

In accordance with Texas Rule of Appellate Procedure 9.4(i)(3), I, Jason Bennyhoff,

hereby certify that the foregoing electronically created document has been reviewed

by the word count function of the creating computer program, and has been found to

be in compliance with the requisite word count requirement in that its word count in

its entirety is 1,594 words.

/s/Jason Bennyhoff

Jason Bennyhoff

APPENDIX

Exhibit A - Fourteenth Court of Appeals opinion in *Evans v. State*

Exhibit B - Order granting rehearing, State's Motion for Rehearing and Amended

Motion for Rehearing in *State v. Villarreal*

No.

In the

## COURT OF CRIMINAL APPEALS

For the

## STATE OF TEXAS

---

## THOMAS ANDREW EVANS, II

*Appellant*

v

## THE STATE OF TEXAS

*Appellee*

---

## On State's Petition for Discretionary Review from the Fourteenth Court of Appeals, Appeal Number 14-13-00642-CR
## On Appeal from County Court at Law Number Two of Fort Bend County, Texas, Cause Number 12-CCR-159784

---

## STATE'S PETITION FOR DISCRETIONARY REVIEW

---

## APPENDIX

Exhibit A - Fourteenth Court of Appeals opinion in *Evans v. State*

Exhibit B – Order granting rehearing, State's Motion for Rehearing and Amended Motion for Rehearing in *State v. Villarreal*

# EXHIBIT A

**Reversed and Remanded Memorandum Opinion filed February 10, 2015.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-13-00642-CR

---

## THOMAS ANDREWS EVANS II, Appellant

### V.

## THE STATE OF TEXAS, Appellee

---

**On Appeal from the County Court at Law No. 2**
**Fort Bend County, Texas**
**Trial Court Cause No. 12-CCR-159784**

---

## M E M O R A N D U M   O P I N I O N

Appellant Thomas Andrews Evans II was charged with driving while intoxicated. After the trial court denied his motion to suppress, Evans pleaded no contest to the charge. Evans appeals his conviction and alleges that the trial court erred in denying his motion to suppress the evidence obtained from a warrantless nonconsensual blood draw because his blood was drawn in violation of the Fourth Amendment. We reverse and remand.

## BACKGROUND

On March 26, 2011, Department of Public Safety Trooper Eric Robinson was dispatched to Highway 99 northbound at Cinco Ranch in Fort Bend County, Texas. Trooper Robinson arrived at the scene of the accident at approximately 2:30 a.m. Evans, two Fort Bend County deputies, and the wrecker drivers were already present at the scene. Trooper Robinson spoke with Deputy Aquino, who informed him that Evans had been driving a Toyota Tundra and struck a Chevrolet Traverse with two people inside. The collision caused the Chevrolet Traverse to strike the median in the road and flip over several times. The two occupants of the Chevrolet Traverse were transported to Memorial Hermann Hospital in Katy to be treated for bodily injuries and were not present at the scene when Trooper Robinson arrived. The damage to the vehicles was extensive and neither vehicle was capable of being driven from the scene of the accident. Another DPS trooper arrived later to assist in monitoring traffic.

When Trooper Robinson arrived, Evans was sitting in the back of a patrol car. Trooper Robinson began asking Evans questions to investigate the cause of the accident. In response to Trooper Robinson's questioning, Evans stated that he had been coming from a friend's bar and admitted to drinking two to three beers. Trooper Robinson observed that Evans smelled of alcohol, had slurred speech, and had red and glassy eyes. Trooper Robinson administered one field sobriety test and determined that Evans was under the influence of alcohol. Evans refused to participate in the other field sobriety tests. Trooper Robinson arrested Evans and transported him to Memorial Hermann Hospital.

At the hospital, Trooper Robinson played Evans an audio recording of the

2

statutory DWI warning contained in the DIC–24 form[1] and requested that he provide a voluntary specimen to test for intoxication. Pursuant to the mandatory blood draw provision, Trooper Robinson was required to obtain a specimen of Evans's blood. *See* Tex. Transp. Code § 724.012(b)(1)(C). Evans refused consent to the blood draw and a nurse drew Evans's blood at 4:40 a.m. Trooper Robinson did not obtain a warrant for the blood draw.

Evans was charged with operating a motor vehicle in a public place while intoxicated. *See* Tex. Penal Code § 49.04(a). Evans filed a motion to suppress the evidence obtained from the blood draw. After conducting a hearing, the trial court entered an order denying the motion on June 26, 2013.

Trooper Robinson was the only witness to testify at the suppression hearing. Trooper Robinson testified that he did not attempt to obtain a search warrant and had never previously gotten a search warrant for a blood draw. Although he testified that he did not know whether a magistrate was on call at the time,[2] he estimated that it would have only taken one hour to get a warrant. Trooper Robinson admitted that "had [he] made the decision to prepare a probable cause affidavit and fax it to a judge who was on call, that [he] had sufficient time to do that in this investigation." When asked why he did not attempt to get a warrant, Trooper Robinson testified that he was relying on the mandatory blood draw provision, which authorizes a nonconsensual blood draw when there is an accident and someone other than the arrestee is taken to the hospital for injuries. *See* Tex. Transp. Code § 724.012(b)(1)(C). On April 30, 2014, the trial court issued findings

---

[1] The DIC–24 form is a standard form commonly used by the DPS to request breath or blood specimens from suspected intoxicated drivers. *See Martin v. Dep't of Pub. Safety*, 964 S.W.2d 772, 773 (Tex. App.—Austin 1998, no pet.). The form sets forth the required warnings from Section 724.015 of the Texas Transportation Code. *See* Tex. Transp. Code § 724.015.

[2] In his findings of fact, the trial judge stated that "[t]he Court's personal recollection is that Fort Bend County does not have a 24-hour magistrate on call to sign blood search warrants."

3

of fact and conclusions of law, reaffirming its denial of the motion to suppress.

## STANDARD OF REVIEW

We review a trial court's denial of a motion to suppress under a bifurcated standard. *Turrubiate v. State*, 399 S.W.3d 147, 150 (Tex. Crim. App. 2013). We review the trial court's factual findings for an abuse of discretion. *Id.* At the suppression hearing, the trial court is the sole finder of fact and is free to believe or disbelieve any or all of the testimony presented. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts, particularly when the trial court's factual findings are based on an evaluation of credibility and demeanor. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010).

Additionally, we review de novo the trial court's application of the law of search and seizure to the trial court's express or implied determination of historical facts. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We review de novo the trial court's application of the law to those facts. *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). We must view the evidence in the light most favorable to the trial court's ruling. *State v. Castleberry*, 332 S.W.3d 460, 465 (Tex. Crim. App. 2011). The trial court's ruling will be sustained if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

## ANALYSIS OF APPELLANT'S ISSUE

In eight issues on appeal, Evans contends that the trial court erred in denying his motion to suppress. We limit our discussion to whether the warrantless nonconsensual blood draw violated Evans's rights under the Fourth Amendment

because we find this issue dispositive.[3] Evans alleges that the blood draw violated the Fourth Amendment because it does not meet any exception to the Fourth Amendment warrant requirement. We agree.

## I. The Fourth Amendment

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. "Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, [the Supreme Court of the United States] has inferred that a warrant must generally be secured." *Kentucky v. King*, 131 S. Ct. 1849, 1856 (2011). "In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement." *Riley v. California*, 134 S. Ct. 2473, 2482 (2014). "The exceptions to the rule that a search must rest upon a search warrant have been jealously and carefully drawn . . . ." *Jones v. United States*, 357 U.S. 493, 499 (1958). These exceptions include voluntary consent to search, search under exigent circumstances, and search incident to arrest. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).

---

[3] Although Evans also contends that the mandatory blood draw provision is unconstitutional, we need not decide this issue because it is not absolutely necessary to deciding this case. *See Douds v. State*, 434 S.W.3d 842, 860 (Tex. App.—Houston [14th Dist.] 2014, pet. granted) (en banc, op. on reh'g.) (declining to decide the constitutionality of the mandatory blood draw provision because the statute did not play a role in the court's Fourth Amendment analysis); *see also Leal v. State*, --- S.W.3d ---, No. 14-13-00208-CR, 2014 WL 5898299, at *4 n.3 (Tex. App.—Houston [14th Dist.] Nov. 13, 2014, no pet.) (quoting *State ex rel. Lykos v. Fine*, 330 S.W.3d 904, 909 (Tex. Crim. App. 2011)) ("The constitutionality of a statute is not to be determined in any case unless such a determination is absolutely necessary to decide the case in which the issue is raised.").

When a defendant alleges that a search or seizure violates the Fourth Amendment, he must produce some evidence that rebuts the presumption of proper police conduct. *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009). To satisfy this burden, the defendant must establish that the search or seizure occurred without a warrant. *Id.* Here, it is undisputed that the State obtained Evans's blood without securing a warrant. Thus, the burden shifts to the State to prove that the warrantless seizure was reasonable. *Id.* A warrantless search or seizure is reasonable only if it falls within a specific exception to the Fourth Amendment warrant requirement. *Riley*, 134 S. Ct. at 2482.

## II. Warrantless Blood Draw

Evans contends that the trial court erred in denying his motion to suppress because the State cannot show that an exception to the Fourth Amendment warrant requirement applies. In response, the State argues that the warrantless seizure was reasonable because (1) Evans impliedly consented to the blood draw, and in the alternative, (2) exigent circumstances justified the warrantless seizure.[4]

### A. Implied Consent

The State asserts that the blood draw was reasonable because Evans impliedly consented to having his blood drawn. More specifically, the State asks "that this Court consider the issue of whether the implied consent contained in the Texas Transportation Code authorizes a warrantless blood draw deriving from that implied consent." The State relies on Section 724.011(a) of the Texas

---

[4] The State also argues that the evidence should not be suppressed because the good faith exception to the federal exclusionary rule applies. Because this argument contradicts our decision in *Douds*, the State asks "this Court not to apply that holding here, or to reexamine that holding in light of the posture in which it places law enforcement and the lack of effect it would have in deterring police misconduct." We decline to revisit our holding in *Douds* and hold that the good faith exception to the federal exclusionary rule does not apply. *See Douds*, 434 S.W.3d at 861–62.

Transportation Code, which states, in relevant part:

> If a person is arrested for an offense arising out of acts alleged to have been committed while the person was operating a motor vehicle in a public place . . . the person is deemed to have consented . . . to submit to the taking of one or more specimens of the person's breath or blood for analysis to determine the alcohol concentration or the presence in the person's body of a controlled substance, drug, dangerous drug, or other substance.

The State asserts that this provision establishes that the seizure was reasonable because it provides that Evans impliedly consented to having his blood drawn. Here, however, Evans expressly refused consent to having his blood drawn. The implied consent statute does not authorize a blood draw, without his consent, unless the mandatory blood draw provisions of Section 724.012(b) are implicated. *See Cole v. State*, --- S.W.3d ---, No. 06-13-00179-CR, 2014 WL 7183859, at *4 (Tex. App.—Texarkana Dec. 18, 2014, no pet.); *see also* Tex. Transp. Code § 724.013 ("Except as provided by Section 724.012(b), a specimen may not be taken if a person refuses to submit to the taking of a specimen designated by a peace officer.").

The mandatory blood draw provision provides that, in the absence of consent, an officer is required to obtain a sample of breath or blood when an individual other than the arrestee has suffered bodily injury and has been transported to a hospital or other medical facility for medical treatment. *See* Tex. Transp. Code 724.012(b)(1)(C). The State, in essence, is arguing that the mandatory blood draw provision should constitute a *per se* exception to the Fourth Amendment warrant requirement.

The Court of Criminal Appeals recently rejected this argument in *State v. Villarreal. See* --- S.W.3d ---, No. PD-0306-14, 2014 WL 6734178, at *11 (Tex. Crim. App. Nov. 26, 2014). Similarly, the State in *Villarreal* argued that the

7

implied consent and mandatory blood draw provisions should be upheld as categorically reasonable under the consent exception to the warrant requirement. *Id.* at *10. The Court of Criminal Appeals held that the mandatory blood draw provisions, by themselves, do not form a *per se* exception to the Fourth Amendment warrant requirement. *See id.* at *14. Under *Villarreal*, an officer is required to obtain a search warrant to draw a defendant's blood, unless he can show that an exception to the warrant requirement applies. *Id.* at *8. *Villarreal* establishes that consent provided by the implied consent and mandatory blood draw provisions cannot be the exception when that consent is expressly refused. *Id.* at *11 ("It would be wholly inconsistent with these principles [of the Fourth Amendment] to uphold the warrantless search of a suspect's blood on the basis of consent when a suspect has, as in the present case, expressly and unequivocally refused to submit to the search."). Implied consent that has been revoked by a defendant cannot serve as a substitute for the free and voluntary consent required by the Fourth Amendment. *Id.* Instead, reasonableness must be judged under a totality of the circumstances approach. *Id.* at *8 ("Given this totality-of-the-circumstances approach, for the most part, 'per se rules are inappropriate in the Fourth Amendment context.'").

In light of the Court of Criminal Appeals' holding in *Villarreal*, we reject the State's argument that the implied consent and mandatory blood draw provisions constitute an exception to the warrant requirement. Because Evans refused consent to the blood draw, the State cannot prove that the consent exception to the warrant requirement applies.[5]

---

[5] The State also argues that the warrantless seizure did not violate the Fourth Amendment because Trooper Robinson's misinterpretation of the mandatory blood draw provision was a reasonable mistake of law. The State relies on *Heien v. North Carolina*, in which an officer pulled a vehicle over because one brake light was out and he believed the statute at issue

8

## B.    Exigent Circumstances

Evans further asserts that the blood draw violated the Fourth Amendment because there were no exigent circumstances to justify the warrantless seizure. We agree.

Courts recognize that a warrantless search and seizure can be reasonable "[w]here there are exigent circumstances in which police action literally must be 'now or never' to preserve the evidence of the crime." *Douds*, 434 S.W.3d at 850 (quoting *Roaden v. Kentucky*, 413 U.S. 496, 505 (1973)). Exigent circumstances generally fall within one or more of three categories: (1) providing aid or assistance to persons whom law enforcement reasonably believes are in need of assistance; (2) protecting police officers from persons whom they reasonably believe to be present, armed, and dangerous; and (3) preventing the destruction of evidence or contraband. *Gutierrez v. State*, 221 S.W.3d 680, 685 (Tex. Crim. App. 2007).

Under *Missouri v. McNeely*, to determine whether an officer faced an emergency or whether exigent circumstances existed to justify a warrantless seizure in a DWI investigation, we must consider the totality of the circumstances and analyze the facts on a case-by-case basis. --- U.S. ---, 133 S. Ct. 1552, 1558–59 (2013). *McNeely* requires an officer to identify factors that suggest he faced an emergency or unusual delay in obtaining a warrant. *See id.* at 1567. The court further explained that "[i]n those drunk-driving investigations where police

---

required two working brake lights. 135 S. Ct. 530, 534 (2014). During the search, the officer found cocaine in the vehicle. *Id.* The trial court later held that the statute only required one working brake light. *Id.* The Supreme Court held that the search was reasonable because reasonable suspicion required for a traffic stop can rest on a reasonable mistake of law. *Id.* at 536. We reject the State's argument because Trooper Robinson did not misinterpret the mandatory blood draw provision. Instead, Trooper Robinson drew Evans's blood in accordance with the exact language of the mandatory blood draw provision. Because Trooper Robinson did not misinterpret the statute, there can be no mistake of law defense.

officers can reasonably obtain a warrant before a blood sample can be drawn without significantly undermining the efficacy of the search, the Fourth Amendment *mandates* that they do so." *Id.* at 1561 (emphasis added).

We apply an objective standard of reasonableness to determine whether a warrantless search was justified, and we take into account the facts and circumstances known to the police at the time of the warrantless search. *Colburn v. State*, 966 S.W.2d 511, 519 (Tex. Crim. App. 1998); *see also Douds*, 434 S.W.3d at 854 ("The relevant inquiry is whether, given the facts and circumstances known to police at the time, it would be objectively reasonable for an officer to conclude that taking the time necessary to obtain a warrant before drawing a blood sample would significantly undermine the efficacy of a blood alcohol test.").

The State contends that exigent circumstances existed because obtaining a warrant would have significantly delayed the blood draw process. In support of its contention, the State provides the following factors: (1) the nature of the accident; (2) the time it took to draw Evans's blood without a warrant; and (3) the trial judge's personal knowledge that there is not a magistrate is on call twenty-four hours in Fort Bend County.

In *Douds*, this court held that evidence of an accident investigation, by itself, does not demonstrate exigent circumstances. *Id.* In that case, two vehicles were involved in an accident and one passenger was transported to the hospital. *Id.* at 845. The driver was suspected of being under the influence of alcohol and his blood was drawn approximately two hours after the officer arrived at the scene. *Id.* at 845–46. The court held that the State did not prove exigent circumstances existed to justify the warrantless blood draw because an accident investigation combined with the rapid dissipation of blood alcohol, without more, did not demonstrate that the officer faced any emergency or undue delay in obtaining a

10

warrant. *Id.* at 854–55. We hold that the facts of *Douds* are analogous to the present case and conclude that the State cannot show obtaining a warrant was impractical.

The record does not reflect any facts to support the State's argument that obtaining a warrant would have significantly delayed the blood draw process. *See id.* at 855 (holding that the state could not show it was impractical for the police to obtain a warrant in the two-hour time span between when the officer arrived to the scene and when the defendant's blood was drawn). To the contrary, Trooper Robinson testified at the suppression hearing that he believed there was sufficient time to obtain a warrant if he attempted to do so. The only reason that Trooper Robinson did not attempt to obtain a warrant is because he was relying on the mandatory blood draw provision of Section 724.012. *See* Tex. Transp. Code § 724.012(b)(1)(C).

When Trooper Robinson arrived at the scene, the two occupants of the other vehicle had already been transported to the hospital. There were also two Fort Bend County deputies and one DPS trooper at the scene assisting in the investigation who could have helped secure a warrant. Furthermore, the State cannot show that further delay in obtaining a warrant past 4:40 a.m. would have significantly undermined the efficacy of the blood alcohol test. *See Douds*, 434 S.W.3d at 855 ("Nor is there evidence that any 'further delay in order to secure a warrant' beyond 4:45 a.m. 'would have threatened the destruction of evidence' that 'is lost gradually and relatively predictably.'").

Although Trooper Robinson was unfamiliar with the procedures required to obtain a warrant, this in itself, is not an exigent circumstance. *See State v. Anderson*, 445 S.W.3d 895, 903 (Tex. App.—Beaumont 2014, no pet.) ("Some examples of exigency include hot pursuit, entering a building to put out a fire, entering a home to aid an occupant, or, in some contexts, preventing destruction of

evidence."). The State also argues that the trial judge's personal recollection that Fort Bend County does not generally have a magistrate on-call is evidence that Trooper Robinson would have faced an unusual delay in obtaining a warrant. Our inquiry, however, must focus on the facts and circumstances known to Trooper Robinson at the time of the accident. *Douds*, 434 S.W.3d at 854. Trooper Robinson testified that he did not know whether there was a magistrate on-call at the time of the accident. The trial judge's personal knowledge cannot establish whether a magistrate was available on the night of the accident.

The State further argues that the nature of the accident created an exigent circumstance because the two vehicles could not be driven and two people were transported to the hospital. We decline to examine the nature of the accident because the severity of the accident is not the focus of our inquiry. *See id.* at 853 (stating that "making courts responsible for grading the severity of accidents would lead inevitably to inconsistent outcomes"). Instead, the focus is on whether Trooper Robinson objectively believed obtaining a warrant would delay the blood draw process. *See id.* at 854. The above facts, taken together, do not demonstrate that Trooper Robinson faced any emergency or unusual delay. *See McNeely*, 133 S. Ct. at 1567. Although all findings of historical fact supported by the record must be implied in favor of the trial court's ruling that the blood draw should not be suppressed, whether those facts meet the legal standard of exigent circumstances is a legal question that we review de novo. *Douds*, 434 S.W.3d at 855. Because the accident investigation, by itself, is not an exigent circumstance and the record reflects that Trooper Robinson believed he had time to secure a warrant, we hold that the State cannot show exigent circumstances existed to justify the warrantless seizure.

12

## CONCLUSION

We reverse and remand for further proceedings consistent with this opinion.

/s/  Ken Wise
Justice

Panel consists of Justices McCally, Brown, and Wise.
Do Not Publish — TEX. R. APP. P. 47.2(b).

# EXHIBIT B

FILE COPY



**COURT OF CRIMINAL APPEALS**
P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

SHARON KELLER
  PRESIDING JUDGE

LAWRENCE E. MEYERS
CHERYL JOHNSON
MIKE KEASLER
BARBARA P. HERVEY
ELSA ALCALA
BERT RICHARDSON
KEVIN P. YEARY
DAVID NEWELL
  JUDGES

ABEL ACOSTA
CLERK
(512) 463-1551

SIAN SCHILHAB
GENERAL COUNSEL
(512) 463-1597

Wednesday, February 25, 2015

Jacqueline Rae
Assistant District Attorney
901 Leopard, Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

District Attorney Nueces County
Mark Skurka
901 Leopard  Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Fred Jimenez
ATTORNEY AT LAW
509 Lawrence St., Suite 301
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

Douglas K. Norman
Assistant District Attorney
901 Leopard, Room 206
Corpus Christi, TX 78401
* DELIVERED VIA E-MAIL *

**Re:** STATE OF TEXAS VS. DAVID VILLARREAL
**CCA No.** PD-0306-14
**Trial Court Case No.** 12-CR-1000-H

Dear Counselors:

The Court has this day granted the State's motion for rehearing.

The case will be submitted to the Court on Wednesday, March 18, 2015.

Sincerely,

Abel Acosta, Clerk

PD-0306-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/17/2014 2:52:50 PM
Accepted 12/18/2014 8:54:31 AM
ABEL ACOSTA
CLERK

NO. PD-0306-14
(Appellate Court Cause No. 13-13-253-CR)

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE |
| Petitioner, | § | |
| | § | |
| V. | § | COURT OF CRIMINAL APPEALS |
| | § | |
| DAVID VILLARREAL, | § | |
| Respondent. | § | OF TEXAS |

## PETITIONER'S AMENDED MOTION FOR REHEARING

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

Comes now the State of Texas, by and through the District Attorney for the 105th Judicial District of Texas, and submits this amended motion for rehearing, pursuant to Tex. R. App. P. 79.1 & 79.3, and requests that the Court reconsider its November 26, 2014, opinion in this case, grant this motion, and resubmit this case.

For the reasons set forth in the State's briefs, as well as those set forth in the dissenting opinions, the State believes that rehearing and reconsideration are appropriate in the present case.

## I. WAIVER.

Specifically, the State contends that the majority opinion too quickly dismissed the State's argument that Texas drivers have validly waived their right to object to a warrantless blood draw under the limited circumstances set out in the implied consent / mandatory draw statute.

1

This Court's majority opinion stated, "we are aware of no Supreme Court cases approving of [the waiver] doctrine's applicability in a context similar to the one with which we are confronted today," distinguishing the present case from Supreme Court waiver cases based on federal regulations. (Slip. Op. at 25) Yet, the majority opinion made no persuasive argument why waiver in the context of state regulation of a highly regulated activity like driving should be treated differently from the federally regulated activities in *Zap* and *Biswell*.

In *Zap*, the Supreme Court relied upon both federal statutory authority and a government contract with the defendant to establish a waiver of that defendant's right to insist on a warrant before his records could be inspected by government officials with whom he chose to do business as a Navy contractor. *See Zap v. United States*, 328 U.S. 624, 626-27, 66 S. Ct. 1277 (1946), *vacated on other grounds*, 330 U.S. 800 (1947).

In *Biswell*, the Supreme Court relied upon statutory authority for the warrantless inspection of a gun dealer's records, firearms and ammunition. *See United States v. Biswell*, 406 U.S. 311, 316, 92 S. Ct. 1593 (1972).

In the present case, the mere fact that the state, and not the federal government, regulates driving offers no principled reason for disallowing waiver. Nor should it matter that driving is engaged in for both personal and

business reasons. Moreover, a Texas driver is clearly on notice of the waiver in question. In addition to the statute and presumed knowledge of the law, the Texas Driver's Handbook clearly puts present and prospective drivers on notice of the implied consent law. See Texas Driver's Handbook, p. 60 (rev. July 2012).

Finally, this Court should not reject the waiver exception simply because it has never before been applied to the particular circumstances in the present case. Waiver remains a "well recognized exception" to the warrant requirement, even though waiver of the specific right of an impaired driver to object to a warrantless blood draw may not be a "well recognized application" of that exception.

## II. SPECIAL NEEDS.

Alternatively, with regard to "special needs," the majority opinion too quickly dismissed that exception on the ground that the primary purpose of such a blood draw was supposedly to collect evidence for a criminal trial. In doing so, the Court neglected the equally valid and compelling purpose of revoking the driving privilege of those who have shown themselves to be too irresponsible to continue to hold that privilege.

Under the mandatory draw provisions of the Texas Transportation Code, in addition to providing evidence for a criminal prosecution, the results

of the blood draw may be used in the administrative removal of drunken drivers from the public roadways. The Department of Public Safety must suspend the person's license if analysis of the blood reveals an alcohol concentration of 0.08 or greater. TEX. TRANSP. CODE § 524.012(b)(1); TEX. PENAL CODE § 49.01(2)(B). The suspension is for a period of 90 days or one year, depending on whether the person has had any prior DWI arrests in the ten years preceding the current date of arrest. TEX. TRANSP. CODE § 524.022(a).

This Court has noted that the "primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but is to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Ex parte Tharpe*, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996); *see also Tex. Dept. Pub. Safety v. Richardson*, 384 S.W.2d 128, 132 (1964) ("But, it should be made abundantly clear that in this case [of driver's license revocation] we are not concerned with criminal penalties but rather with an administrative and regulative power vested in the Texas Department of Public Safety which power has for its purpose the protection of the lives and property of those using the highways.").

Accordingly, the mandatory draw statute may be justified under the special needs exception, as applied to the closely regulated

4

activity of driving on public roads, and as a tool not only of criminal enforcement but also for administrative measures designed to protect the public from drunk drivers by removing their driving privileges.

## III. GENERAL FOURTH AMENDMENT REASONABLENESS.

In addition, both Presiding Judge Keller's Dissenting Opinion, and Judge Meyers' Dissenting Opinion appear to rely on a generalized reasonableness approach that looks to the totality of the circumstances, the needs of the public and law enforcement, and the lowered expectation of privacy that repeat offenders have in the minor inconvenience of a compelled blood draw. The State suggests that these considerations are entitled to more weight than was given to them in the majority opinion.

## IV. MISTAKE OF LAW.

Finally, the State believes that the very recent opinion by the United States Supreme Court in *Heien v. North Carolina*, --- U.S. ---, No. 13-604 (December 15, 2014), should be considered by this Court on rehearing.

In *Heien*, the Supreme Court, arguably for the first time, recognized that an officer's reasonable mistake of law, like a reasonable mistake of fact, may render legal conduct that would otherwise amount to a Fourth Amendment violation. Specifically, in *Heien*, the Court held that it was "objectively reasonable for an officer in Sergeant Darisse's position to think that Heien's

5

faulty right brake light was a violation of North Carolina law. And because the mistake of law was reasonable, there was reasonable suspicion justifying the stop." Slip op. at 13.

On a broader level, the Supreme Court reasoned that, "[t]o be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway for enforcing the law in the community's protection.'" Slip op. at 5 (quoting *Brinegar* v. *United States*, 338 U. S. 160, 176 (1949)).

In the present case, Officer Williams clearly relied on what he reasonably believed to be a valid statutory mandate for him to require the blood draw in question. To that extent that he reasonably relied upon the implied consent / mandatory draw statute, he, like Sergeant Darisse, did not violate the Fourth Amendment by conduct that would later be shown to be a mistake of law.

Since this Court did not have the benefit of the *Heien* opinion at the time it handed down its November 26th opinion, the State believes that rehearing and reconsideration would be especially appropriate.

## PRAYER

For the foregoing reasons, the State requests that the Court reconsider its November 26, 2014, opinion in this case; grant this motion for rehearing; resubmit this case in order to address the State's contentions as set out in this motion; and, after doing so, reverse the judgment of the Thirteenth Court of Appeals and vacate the trial court's suppression order.

Respectfully submitted,

/s/ *Douglas K. Norman*

Douglas K. Norman
State Bar No. 15078900

/s/ *Jacqueline Lamerson*

Jacqueline Lamerson
State Bar No. 24074923
Assistant District Attorneys
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this motion, excluding those matters listed in Rule 9.4(i)(1), is 1,271.

/s/ *Douglas K. Norman*

---
Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that, pursuant to Tex. R. App. P. 6.3 (a), copies of this motion were e-mailed on December 17, 2014, to Respondent's attorney, Mr. Fred Jimenez, and to the State Prosecuting Attorney.

/s/ *Douglas K. Norman*

---
Douglas K. Norman

8

PD-0306-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/10/2014 9:25:07 AM
Accepted 12/10/2014 9:35:22 AM
ABEL ACOSTA
CLERK

NO. PD-0306-14
(Appellate Court Cause No. 13-13-253-CR)

| | | |
|---|---|---|
| THE STATE OF TEXAS, | § | IN THE |
| Petitioner, | § | |
| | § | |
| V. | § | COURT OF CRIMINAL APPEALS |
| | § | |
| DAVID VILLARREAL, | § | |
| Respondent. | § | OF TEXAS |

## PETITIONER'S MOTION FOR REHEARING

TO THE HONORABLE COURT OF APPEALS:

Comes now the State of Texas, by and through the District Attorney for the 105th Judicial District of Texas, and submits this motion for rehearing, pursuant to Tex. R. App. P. 79.1, and requests that the Court reconsider its November 26, 2014, opinion in this case, grant this motion, and resubmit this case.

For the reasons set forth in the State's briefs, as well as those set forth in the dissenting opinions, the State believes that rehearing and reconsideration are appropriate in the present case.

### I. WAIVER.

Specifically, the State contends that the majority opinion too quickly dismissed the State's argument that Texas drivers have validly waived their right to object to a warrantless blood draw under the limited circumstances set out in the implied consent / mandatory draw statute.

1

This Court's majority opinion stated, "we are aware of no Supreme Court cases approving of [the waiver] doctrine's applicability in a context similar to the one with which we are confronted today," distinguishing the present case from Supreme Court waiver cases based on federal regulations. (Slip. Op. at 25) Yet, the majority opinion made no persuasive argument why waiver in the context of state regulation of a highly regulated activity like driving should be treated differently from the federally regulated activities in *Zap* and *Biswell*.

In *Zap*, the Supreme Court relied upon both federal statutory authority and a government contract with the defendant to establish a waiver of that defendant's right to insist on a warrant before his records could be inspected by government officials with whom he chose to do business as a Navy contractor. *See Zap v. United States*, 328 U.S. 624, 626-27, 66 S. Ct. 1277 (1946), *vacated on other grounds,* 330 U.S. 800 (1947).

In *Biswell*, the Supreme Court relied upon statutory authority for the warrantless inspection of a gun dealer's records, firearms and ammunition. *See United States v. Biswell*, 406 U.S. 311, 316, 92 S. Ct. 1593 (1972).

In the present case, the mere fact that the state, and not the federal government, regulates driving offers no principled reason for disallowing waiver. Nor should it matter that driving is engaged in for both personal and

business reasons. Moreover, a Texas driver is clearly on notice of the waiver in question. In addition to the statute and presumed knowledge of the law, the Texas Driver's Handbook clearly puts present and prospective drivers on notice of the implied consent law. See Texas Driver's Handbook, p. 60 (rev. July 2012).

Finally, this Court should not reject the waiver exception simply because it has never before been applied to the particular circumstances in the present case. Waiver remains a "well recognized exception" to the warrant requirement, even though waiver of the specific right of an impaired driver to object to a warrantless blood draw may not be a "well recognized application" of that exception.

## II. SPECIAL NEEDS.

Alternatively, with regard to "special needs," the majority opinion too quickly dismissed that exception on the ground that the primary purpose of such a blood draw was supposedly to collect evidence for a criminal trial. In doing so, the Court neglected the equally valid and compelling purpose of revoking the driving privilege of those who have shown themselves to be too irresponsible to continue to hold that privilege.

Under the mandatory draw provisions of the Texas Transportation Code, in addition to providing evidence for a criminal prosecution, the results

3

of the blood draw may be used in the administrative removal of drunken drivers from the public roadways. The Department of Public Safety must suspend the person's license if analysis of the blood reveals an alcohol concentration of 0.08 or greater. TEX. TRANSP. CODE § 524.012(b)(1); TEX. PENAL CODE § 49.01(2)(B). The suspension is for a period of 90 days or one year, depending on whether the person has had any prior DWI arrests in the ten years preceding the current date of arrest. TEX. TRANSP. CODE § 524.022(a).

This Court has noted that the "primary purpose of the administrative license suspension statute is not to deter the licensee or to seek retribution, but is to protect the public from the carnage on the public roads of Texas caused by drunk drivers." *Ex parte Tharpe*, 935 S.W.2d 157, 159 (Tex. Crim. App. 1996); *see also Tex. Dept. Pub. Safety v. Richardson*, 384 S.W.2d 128, 132 (1964) ("But, it should be made abundantly clear that in this case [of driver's license revocation] we are not concerned with criminal penalties but rather with an administrative and regulative power vested in the Texas Department of Public Safety which power has for its purpose the protection of the lives and property of those using the highways.").

Accordingly, the mandatory draw statute may be justified under the special needs exception, as applied to the closely regulated

activity of driving on public roads, and as a tool not only of criminal enforcement but also for administrative measures designed to protect the public from drunk drivers by removing their driving privileges.

## III. GENERAL FOURTH AMENDMENT REASONABLENESS.

Finally, both Presiding Judge Keller's Dissenting Opinion, and Judge Meyers' Dissenting Opinion appear to rely on a generalized reasonableness approach that looks to the totality of the circumstances, the needs of the public and law enforcement, and the lowered expectation of privacy that repeat offenders have in the minor inconvenience of a compelled blood draw. The State suggests that these considerations are entitled to more weight than was given to them in the majority opinion.

## PRAYER

For the foregoing reasons, the State requests that the Court reconsider its November 26, 2014, opinion in this case; grant this motion for rehearing; resubmit this case in order to address the State's contentions as set out in this motion; and, after doing so, reverse the judgment of the Thirteenth Court of Appeals and vacate the trial court's suppression order.

Respectfully submitted,

/s/ *Douglas K. Norman*

Douglas K. Norman
State Bar No. 15078900

/s/ *Jacqueline Rae*

Jacqueline Lamerson
State Bar No. 24074923
Assistant District Attorneys
105th Judicial District of Texas
901 Leopard, Room 206
Corpus Christi, Texas 78401
(361) 888-0410
(361) 888-0399 (fax)

6

## RULE 9.4 (i) CERTIFICATION

In compliance with Texas Rule of Appellate Procedure 9.4(i)(3), I certify that the number of words in this motion, excluding those matters listed in Rule 9.4(i)(1), is 972.

/s/ *Douglas K. Norman*

Douglas K. Norman

## CERTIFICATE OF SERVICE

This is to certify that, pursuant to Tex. R. App. P. 6.3 (a), copies of this motion were e-mailed on December 10, 2014, to Respondent's attorney, Mr. Fred Jimenez, and to the State Prosecuting Attorney.

/s/ *Douglas K. Norman*

Douglas K. Norman